**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**ALLISON STOKER-BONANNO,**
        **Plaintiff,**

**v.**                                                    **Case No:   5:10cv25/SPM/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
        **Defendant.**
_____

## REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Stoker-Bonanno's application for Supplemental Security Income benefits under Title XVI of the Act.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

PROCEDURAL HISTORY

Ms. Stoker-Bonnano filed an application for benefits claiming an onset of disability as of March 28, 2006. The application was denied initially and on reconsideration, and Ms. Stoker-Bonnano requested a hearing before an administrative law judge (ALJ). A hearing was held on April 7, 2008 at which Ms. Stoker-Bonnano was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 10-15) and Ms. Stoker-Bonnano requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 1-5). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Stoker-Bonanno had not engaged in substantial gainful activity since March 28, 2006; that she had severe impairments of (1) a history of congenital spina bifida, (2) lumbar degenerative disc disease, and (3) scoliosis, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform at the full range of sedentary work; that she was unable to perform any past relevant work as an operating room scheduler or receptionist; that she was 31 years old with a high school education and proficiency in the English language, that there were jobs that exist in significant numbers in the national economy that she could perform; and that she was not under a disability as defined in the Act.

STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211

(11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy."
42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  See 20 C.F.R. § 416.920;  20 C.F.R. § 404.1520.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

PLAINTIFF'S MEDICAL HISTORY

The transcript in this case begins with an entry dated August 30, 1994 when Ms. Stoker-Bonanno was seen by Michael Reed, M.D., an internist, for examination post-surgery for the re-section of a congenital division in her spinal column. She also had congenital hip dysplasia with unequal leg lengths. On examination there was left lumber scoliosis, leg length discrepancy, and complaints of back pain, but her reflexes were brisk and her motor exam was normal. There was no evidence of any structural problems of the neck and thoracic spine. The entry in the record does not say whether any treatment was offered at that visit (tr. 176).

The next entry is dated nearly two years later, April 23, 1996, when Ms. Stoker-Bonanno returned to Dr. Reed complaining of mid thoracic pain since she had had a baby. The leg length discrepancy was still present and there was mild thoracic scoliosis. There was no pain on range of motion. X-rays did not disclose anything previously unknown and Dr. Reed recommended physical therapy (tr. 176).

The next entry is dated January 31, 2000, almost four years after the previous visit. On that date Dr. Reed noted that Ms. Stoker-Bonanno was "seeking disability." (tr. 174) On examination there was normal cervical lordosis, normal thoracic kyphosis, and normal lumbar lordosis. The pelvis was uneven. There were complaints of pain in the thoracolumbar spine and Ms. Stoker-Bonanno walked with a limp. She was able to move while standing in all planes without complaints. Straight leg raising was normal in the sitting position and while supine. Dr. Reed's impression was lumbar disc disease with radiculitis and leg length discrepancy with scoliosis. He ordered an MRI of the lumbar spine with follow up (tr. 173-174).

The next entry in the record is dated August 29, 2001 when Ms. Stoker-Bonanno was seen by Cory Gaiser, D.O., an orthopedic surgeon, for mid and low back pain with radiation into the left leg. Other than the previously noticed scoliosis and leg length discrepancy, the physical examination was essentially normal. Dr. Gaiser indicated that he would treat conservatively with anti-inflammatories, Flexoril and Vicodin (tr. 217-218). Ms. Stoker-Bonanno returned to Dr. Gaiser on October 19, 2001 complaining of increased

leg pain.  Physical examination was normal and Dr. Gaiser assessed lumbar sacral sprain-strain with left leg radiculopathy, scoliosis, and pelvic tilt.  He prescribed a Medrol dose pack and return in two weeks (tr. 215).    An MRI of the lower spine was done on October 26, 2001.  The radiologist's impression was of a stable appearance compared to a 2001 study with evidence for spina bifida, scoliotic deformity of the spine and either a clump of nerve roots forming two separate bundles or (less likely) a congenital division of the spine. The condition was stable (tr. 221).

Ms. Stoker-Bonanno returned to Dr. Gaiser on November 9, 2001 essentially unchanged.  Her Flexeril was changed to Soma 350 and she was to follow up in four weeks (tr. 213).  She returned on March 6, 2002 without significant improvement.  Low back pain was intermittent 3-4 times per week.  Dr. Gaiser prescribed a shoe lift and started her on Daypro 600 mg. and Vicoprofen (tr. 211).

On December 1, 2005, almost three years after she had last seen Dr. Gaiser, Ms. Stoker-Bonanno went to the emergency room after having fallen.  Her low back was tender, straight leg raising was positive but the neurological exam was normal.  She was given medication and released (tr. 177-186).

Ms. Stoker-Bonanno's claimed onset date was March 28, 2006, fully 12 years after her first visit to Dr. Reed, four years after her last visit with Dr. Gaiser, and four months after her visit to the emergency room.  There is no history of any medical treatment at or near the time of her claimed onset date.

She next saw a physician for treatment nearly a year later, on February 26, 2007 when she was examined by David Dietrich, M.D., an orthopedic surgeon.  She indicated that she had increasing leg pain and knee pain over the previous two to three months.  She went to the emergency room on February 3, 2007 (this visit is not in the transcript) and said that her left leg "went out" two and a half months earlier (tr. 210).  She indicated that her pain was aggravated by walking, standing, or prolonged sitting.  On examination there was pain when the patella was compressed but there was no swelling or warmth.  She had tight leg muscles and was tender to the inside of the knee joint.  X-rays were unremarkable.  Dr. Dietrich's assessment was left knee pain from bursitis and medial hamstring tendonitis.

He recommended a brace and a physical therapy program focused on hamstring stretching and quad development. He also recommended vocational rehabilitation. She was given Lortab and Naproxen and told to return in a month (tr. 209-210). There is no record that she returned.

On November 18, 2007, Dr. Dietrich filled out a Clinical Assessment of Pain, in which he indicated that Ms. Stoker-Bonanno would suffer from pain to the point that it would be distracting from adequate performance of daily work, that physical activity would increase that pain, and that drug side effects would be expected to be severe and to limit her effectiveness. He further noted that she could lift only ten pounds occasionally and five pounds frequently, could sit for eight hours in an eight hour workday and stand or walk for one hour. She would need an assistive device to ambulate and she was limited in pushing, pulling and bending or stooping (tr. 224-225).

On March 12, 2008, she returned to Dr. Reed, whom she had not seen for more than eight years, complaining of pain and stiffness in her low back and mid back and pain in both legs. Physical examination was essentially normal other than for tight hamstrings and positive straight leg raising on the left at 75°. Dr. Reed's impression was lumbar degenerative disc disease with degenerative lumbar scoliosis and radiculitis. He recommended an MRI but there is no record that one was done.

The only other medical record in the transcript is from an examination for the state agency performed by Kris Lewandowski, M.D., an internist, on July 14, 2006. Dr. Lewandowski was told that Ms. Stoker-Bonnano had spinal surgery at age six and that she now had constant pain in her low back, which radiated into the left leg and all of her toes. The pain covered her entire leg and was sharp and stabbing. On physical examination, her arms were normal. There was some discrepancy in calf size on the right and she was unable to rotate her right ankle laterally. There was decreased range of motion in her right hip. There was no central nervous system deficit and there was normal straight leg raising. Dr. Lewandowski's impression was that Ms. Stoker-Bonanno had an inborn defect of spina bifida surgically repaired at age six, that she had mild scoliosis, her right leg was shorter than the left with some muscle atrophy at the calf and what appeared to be partial paralysis

of the lower left leg, and that she walked with a limp and needed an orthopedic shoe. "Otherwise, her examination [was] unremarkable." (Tr. 188).

## DISCUSSION

Ms. Stoker-Bonnano argues that the ALJ erred in failing to credit her testimony concerning her pain and in failing to discount her subjective complaints of pain appropriately, and that she was disabled from her onset date.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that Ms. Stoker-Bonnano was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Ms. Stoker-Bonnano recounts her medical history at length, and then attempts to show that the ALJ applied the wrong legal standard to her claim, or incorrectly applied the correct standard.  Either way, her claim must fail.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Commissioner of Social Sec.,* 365 Fed. Appx. 209, 2010 WL 476691, *3+ (11th Cir. 2010) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215.  The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).  However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision.  *MacGregor v. Bowen*, 786 F.2d at 1054.  Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054.  Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to

conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, the medical record starts with a complaint of low back pain in August, 1994, nearly twelve years before Ms. Stoker-Bonnano says she became disabled. Over those

---

[2]**Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.** *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

years there were sporadic visits to doctors, but her childhood surgery for spina bifida was stable.  Then in September 2005 she fell.  She went to the emergency room complaining of low back pain.  The physician at the emergency room noted tenderness in Ms. Stoker-Bonanno's low back.  On examination her straight leg raising was positive but she was neurologically intact.  She had no more medical contact until seven months later when she was examined by Dr. Lewandowski on referral by the state agency.  Dr. Lewandowski's report was that Ms. Stoker-Bonnano's back was not tender and she was normal on examination except for a limp caused by her long-standing leg length discrepancy.

She saw Dr. Dietrich once, on February 26, 2007, and nine months later, in November 2007, Dr. Dietrich filled out a form (with no record that he had sen Ms. Stoker-Bonnano since the previous February), stating in effect that she was unable to perform the functions of work.  In March 2008 Ms. Stoker-Bonnano saw Dr. Reed, who had treated her in 1994 and 1996.   Dr. Reed's examination was fairly benign, and he diagnosed degenerative disc disease.

The ALJ did not credit Ms. Stoker-Bonnano subjective complaints of pain for several reasons.  He stated that in reaching his decision he considered Ms. Stoker-Bonanno's testimony, the medical evidence and the medical opinions.  He examined the opinion of Dr. Dietrich and found it entitled to little weight, noting that the limitations in the assessment of pain form were not supported by the physician's notes, observations or treatment records (tr. 14).  Dr. Reed's report was fairly benign, and Dr. Lewandowski reported few, if any, limitations.  In short, other than Dr. Dietrich, who saw Ms. Stoker-Bonnano only once and then filled out a form nine months later without having seen her again, there was nothing in the record to support a finding that Ms. Stoker-Bonnano's subjective complaints of pain were so severe as to be disabling.  The ALJ did not fully credit Ms. Stoker-Bonnano's subjective complaints of pain and he explained why he did not.  It was entirely within his realm of judging for him to do so.  Ms. Stoker-Bonnano has not shown error, and she is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of January, 2011.


/s/ *Miles Davis*

MILES DAVIS
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).